1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **GORDON NICHOLSON, an individual;** ) | **CV F 09 – 01941   AWI SMS** |
| **LORRAINE NICHOLSON, an** ) | |
| **individual,** ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER ON** |
| **Plaintiffs**, ) | **DEFENDANTS' MOTION TO** |
| ) | **DISMISS** |
| **v.** ) | |
| ) | |
| **COUNTY OF STANISLAUS, a public** ) | |
| **entity; JANICE McCLENDON, an** ) | **Doc. # 6** |
| **individual; and DOES 1 through 50,** ) | |
| **inclusive,** ) | |
| ) | |
| **Defendants**. ) | |

        This is an action for damages and declaratory relief by plaintiffs Gordon and Lorraine

Nicholson ("Plaintiffs") against defendants County of Stanislaus ("County") and individual

defendant Janice McClendon ("McClendon") (collectively, "Defendants").  The action arises

out of Defendants' determination, following an inspection by McClendon, that Plaintiffs' iris

farm and iris sales activity violated county zoning ordinances.  Defendants issued a Notice

and Order to Abate" (hereinafter, the "Notice") directing Plaintiffs to cease operation of their

iris business within 30 days.  As a result of the Notice, Plaintiffs allege they destroyed

approximately $100,000 worth of iris stock and notified established customers of the

discontinuance of their business.  Between three and four months after the issuance of the

Notice, Plaintiffs received a memorandum from Defendants stating that, as a result of the

original inspection, it was determined there was no code violation and Defendants were closing the file.  This action followed.  In the instant motion, Defendants seek dismissal pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.  Venue is proper in this court.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

For about eleven years prior to September 2008, Plaintiffs owned and operated an enterprise called "Woodland Iris Garden" (the "Property") which grew and sold iris bulbs or plants.  The complaint alleges the Garden was "authorized and permitted pursuant to Stanislaus County Code § 21.20.020" and had been in operation for eleven years.  Doc. # 1-3 at ¶ 8.  The complaint alleges that on or about September 12, 2008, McClendon performed an inspection at the Property.  Plaintiffs allege that McClendon made a number of "comments" to Plaintiffs during the inspection that stated *inter alia* that Plaintiffs must:

    1.  Cease operation of the iris farm because it operated in violation of county codes.

    2.  Remove a sign from the Property advertising "Woodland Gardens."

    3.  Take down an internet site that had been established to market Garden products.

    4.  Cease and desist from any further tours of the Property to potential customers.

Doc. # 1 - 3 at ¶ 9.

The Notice, which is dated September 12, 2008, was delivered by mail to Plaintiffs and indicated a "compliance date" of October 28, 2008.  The memorandum notifying Plaintiffs that it had been determined that the September inspection indicated there was no county code violation and that the file would be closed on Plaintiffs' case was dated December 31, 2008.  Plaintiffs allege that Plaintiffs timely filed a claim against Stanislaus County pursuant to the California Tort Claims Act, and that the claim was denied.

The complaint was originally filed in Stanislaus County Superior Court on September 25, 2009.  Defendants removed the case to this court on November 4, 2009.  The complaint alleges a total of six claims for relief.  Plaintiffs' first claim alleges inverse condemnation in

violation of the Fifth Amendment Takings Clause.  Plaintiff's fourth claim for relief alleges
Defendants abridged Plaintiffs' Fourteenth Amendment Due Process rights in violation of 42
U.S.C. § 1983.  Plaintiffs' second and third claims for relief allege state law claims for
conversion and negligence, respectively.  Plaintiffs' sixth claim for relief alleges slander of
title.  Plaintiffs' fifth claim for relief requests declaratory relief.  Although the claim is
somewhat ambiguous, it appears Plaintiffs seek declarations as to the validity of Defendants'
practices with regard to the issuance of Notices of Abatement and with regard to the
conformity of Plaintiffs' enterprise with existing applicable zoning ordinances.

Defendants' motion to dismiss was filed on November 6, 2009.  Plaintiffs' opposition
was filed November 30, 2009, and Defendants' reply was filed December 7, 2009.  On
December 10, 2009, the court vacated the hearing date of December 14, 2009, and took the
matter under submission as of that date.

## LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a motion to
dismiss for lack of subject matter jurisdiction.  It is a fundamental precept that federal courts
are courts of limited jurisdiction.  Limits upon federal jurisdiction must not be disregarded or
evaded.  Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978).  The plaintiff
has the burden to establish that subject matter jurisdiction is proper.  Kokkonen v. Guardian
Life Ins. Co., 511 U.S. 375, 377 (1994).  This burden, at the pleading stage, must be met by
pleading sufficient allegations to show a proper basis for the court to assert subject matter
jurisdiction over the action.  McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189
(1936); Fed. R. Civ. P. 8(a)(1).  When a defendant challenges jurisdiction "facially," all
material allegations in the complaint are assumed true, and the question for the court is
whether the lack of federal jurisdiction appears from the face of the pleading itself.  Thornhill
Publishing Co. v. General Telephone Electronics, 594 F.2d 730, 733 (9th Cir. 1979);
Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F. 2d 884, 891 (3d Cir.1977); Cervantez v.

1  Sullivan, 719 F. Supp. 899, 903 (E.D. Cal.1989), rev'd on other grounds, 963 F. 2d 229 (9th

2  Cir.1992).

3          A defendant may also attack the existence of subject matter jurisdiction apart from the

4  pleadings.  Mortensen, 549 F. 2d at 891. In such a case, the court may rely on evidence

5  extrinsic to the pleadings and resolve factual disputes relating to jurisdiction.  St. Clair v. City

6  of Chico, 880 F. 2d 199, 201 (9th Cir.1989); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th

7  Cir.1987); Augustine v. United States, 704 F.2d 1074, 1077 (9th Cir.1983).  "No presumptive

8  truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will

9  not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

10  Thornhill Publishing, 594 F.2d at 733 (quoting Mortensen, 549 F.2d at 891).

11          A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

12  can be based on the failure to allege a cognizable legal theory or the failure to allege

13  sufficient facts under a cognizable legal theory.  Robertson v. Dean Witter Reynolds, Inc.,

14  749 F.2d 530, 533-34 (9th Cir.1984).  To withstand a motion to dismiss pursuant to Rule

15  12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief

16  above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)

17  ("Twombly").  While a court considering a motion to dismiss must accept as true the

18  allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425

19  U.S. 738, 740 (1976), and must construe the pleading in the light most favorable to the party

20  opposing the motion, and resolve factual disputes in the pleader's favor, Jenkins v.

21  McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969), the allegations must be

22  factual in nature.  See Twombly, 550 U.S. at 555 ("a plaintiff's obligation to provide the

23  'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a

24  formulaic recitation of the elements of a cause of action will not do").  The pleading standard

25  set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual

26  allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

27

28                                                    4

accusation." <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009) ("Iqbal").

The Ninth Circuit follows the methodological approach set forth in <u>Iqbal</u> for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

<u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 970 (9th Cir. 2009) (quoting <u>Iqbal</u>, 129 S.Ct. at 1950).

## DISCUSSION

The court will address Defendants' contentions with regard to the viability of Plaintiffs' claims in the order Defendants raise those contentions in their pleadings.

### I. Plaintiffs' Due Process Claim Pursuant to 42 U.S.C. § 1983

Defendants advance four theories for dismissal of Plaintiffs' claim for violation of procedural due process in violation of 41 U.S.C. § 1983 (hereinafter, Plaintiffs' "§ 1983 Claim").  Before addressing those theories individually, it is important to note what is the gravamen of Plaintiffs' § 1983 Claim.  Plaintiffs' fourth claim for relief alleges "violation of [P]laintiffs' right to due process prior to the deprivation of [P]laintiffs' property . . . ."  The claim goes on to allege as follows, in pertinent part:

> In acting as alleged above, in particular with regards to the erroneous issuance of the Notice and the 6-month delay in failing to inform [P]laintiffs there was no violation as alleged, [D]efendants violated [P]laintiffs' right to due process prior to the deprivation of [P]laintiffs' property, guaranteed by the Fourteenth Amendment of the United States Constitution and by the California Constitution, Article 1, Section 7.  ¶  Plaintiffs were afforded no opportunity to challenge the issuance of the Notice, short of violating the laws of Stanislaus County, all as set forth in greater detail in both the Notice and Stanislaus County Code.

Doc. # 1-3 at ¶¶ 36 - 37.

Plaintiffs' claim for relief for violation of procedural due process rights can be construed as having two components; a claim that the erroneous issuance of the Notice

followed by a six-month delay in correcting the error constitutes a due process violation, and a claim alleging that the fact no opportunity was afforded to challenge the validity of the notice constitutes a due process violation.  Given Plaintiffs' arguments in opposition to Defendants' motion, and given that Plaintiffs have alleged no standard by which any delay in the determination that the Notice was issued erroneously could be determined to be a constitutional violation, the court finds it reasonable to presume that the gravamen of Plaintiffs' due process claim is that they were not afforded a pre-depravation opportunity to be heard.

The court is aware that Plaintiffs theory of violation of their due process rights on the ground they were afforded no opportunity for pre-deprivation hearing can be interpreted as being based on either of two theories.  In their opposition to Defendants' motion to dismiss, Plaintiffs devote considerable effort to explaining how County's procedure following issuance of a Notice fails to provide any meaningful opportunity for pre-depravation opportunity to be heard short of being in violation of the zoning statutes and in jeopardy of criminal and civil penalties.  Most of this information is absent from the complaint, however. On the other hand, the court can discern from the complaint Plaintiffs' contention that they were not provided *notice* of any pre-depravation hearing.  The court finds that the parties' briefings regarding the adequacy of Plaintiffs' complaint to state a claim for due process violation is sufficient to allow decision by the court only with respect to the question of whether due process was violated because Defendants failed to provide adequate *notice*. Because the court will deny Defendants' motion to dismiss on that theory, the court will not address Plaintiffs' contention that County's process is itself constitutionally deficient. Rather, the court finds it more appropriate to address the constitutional sufficiency of County's substantive hearing procedure following issuance of a Notice at a later time and upon more developed facts and arguments.

### A. Ripeness/Exhaustion of Administrative Remedies

Defendants contend that Plaintiffs' claim for violation of procedural due process rights in not cognizable where, as here, Plaintiffs have failed to avail themselves of the administrative remedies provided by county ordinance. While Defendants appear to recognize that there is, in general, no requirement for exhaustion of administrative remedies to bring a section 1983 claim, they argue that, because the County has a "robust" administrative mechanism to address the claims Plaintiffs raise, there is no Fourteenth Amendment Violation. See Doc. # 6 at 16:13 - 19 (quoting Dusanek v. Hannon, 677 F.2d 538, 543 - 544 (7 Cir. 1982) (noting failure to use administrative remedies when they are made available implicated concerns of ripeness even though there is no requirement for exhaustion of administrative remedies). Defendants' argument is somewhat improvidently labeled since it does not invoke exhaustion of remedies. Construing Defendants' contention for what it is – a contention that there is no due process violation where adequate process exists – the court must nonetheless deny Defendants motion on that ground.

Defendants appear to have misconstrued the gravamen of Plaintiffs' due process claim. Plaintiffs' due process claim is not based on the ultimate outcome of County's decision or on the existence of an adequate administrative remedy; it is based on the allegation that existing administrative remedies were not made available to them. In short, Plaintiffs' fourth claim for relief is about *notice* and an opportunity to be heard or the lack of it. The question posed by Plaintiffs' fourth claim for relief is, for purposes of the courts' present analysis, whether County made its administrative remedies available to Plaintiffs prior to any deprivation by providing adequate notice of those remedies.

Thus construed, Plaintiffs' due process claim became ripe at the time notice of an opportunity to be heard was due but was not given; that is, at a time reasonably before County would have been authorized to take unilateral action. Given that the Notice provides a 30-day time period before the County can take unilateral abatement action, notice of an

7

opportunity to be heard was due at or shortly after the Notice was delivered to Plaintiffs.  See

Boddie v. Connecticut, 401 U.S. 371, 379 (1971) (due process "requires individual be given

an opportunity for a hearing before he is deprived of a significant property interest").

Because Plaintiffs' claim for due process violation accrued at or near the time of delivery of

the Notice, it is currently ripe for adjudication.

The court concludes that Defendants have failed to show that Plaintiffs' § 1983 Claim

is non-justiciable for lack of ripeness or that exhaustion of administrative remedies is

necessary before Plaintiffs' claim can proceed.  Defendants' motion to dismiss Plaintiffs'

fourth claim for relief on those grounds will therefore be denied.

### B.  Plaintiffs' Section 1983 Claim Seeks to Vindicate a Constitutionally Protected Interest

Defendants' next argue that there is no constitutional violation where, as here,

"Plaintiffs have no constitutional or vested right to any particular zoning or to use their

property in violation of zoning."  Doc. # 16 at 17:11 - 12.  Again, Defendants fail to properly

characterize Plaintiffs' claim.  Plaintiffs are not claiming that they were denied a right to any

particular zoning determination or to a constitutionally protected use of their property.

Plaintiffs' due process complaint alleges they were denied adequate notice of an opportunity

to timely challenge the zoning determination.

In Cleveland Bd. Of Educ. v. Loudermill, 470 U.S. 532 (1985) ("Loudermill"), the

Supreme Court held that:

> the Due Process Clause provides that certain substantive rights – life, liberty
> and property – cannot be deprived except pursuant to constitutionally adequate
> procedures.  The categories of substance and procedure are distinct.  [. . . .]
> While the legislature may elect not to confer a property interest in [public]
> employment, it may not constitutionally authorize the deprivation of such an
> interest, once conferred, without appropriate procedural safeguards.

Id. at 541.

While Plaintiffs may not have a constitutionally guaranteed interest in any particular

zoning designation or any particular use of the property, they allege in their complaint that

use of their property as an iris farm was authorized for a period of eleven years prior to the inspection and Notice and that an opportunity to be heard when County proposed to deprive them of the right to farm irises was not afforded.  Pursuant to <u>Loudermill</u>, these allegations sufficiently state a claim for infringement of procedural due process rights.

### C.  Adequacy of Procedural Due Process

Next, Defendants contend that there was no procedural due process violation because Plaintiffs were afforded an adequate opportunity for notice and an opportunity to be heard. As the court previously observed, Plaintiffs' claim for violation of procedural due process is based on the failure of Defendants to provide the opportunity to be heard; that is, to provide adequate *notice* of the County's administrative procedures to address their concerns. Pertinent to this understanding of Plaintiffs' claim, Defendants contend:

> The [Notice] provided Plaintiffs with the required notice of the alleged violation of the County's zoning code.  In the County's nuisance abatement process, the [Notice] serves not only as notice and opportunity to familiarize themselves [sic] with the requirement of the County Code, but also as an opportunity for discourse between staff and the property owner regarding the proper application of the ordinance code.  Indeed, the [Notice] invited the Plaintiffs to engage both the Department of Environmental Resources and the Planning and Community Development Department. [. . . .] Plaintiffs' Complaint is void of any attempt by the Plaintiffs to make contact with County staff subsequent to the issuance of the [Notice], or prior to taking the acts they allege in the Complaint caused their damage. [. . . .]

Doc. # 6 at 18:12 - 19 (internal citations omitted).

The court has carefully reviewed the Notice and finds that Defendants have overstated its fitness to serve as notice to Plaintiffs of their opportunity to be heard in opposition to the imposition of restrictions under the zoning ordinance.  In pertinent part the Notice provides:

> YOU ARE HEREBY ORDERED to commence the abatement of the aforementioned nuisance and to thereafter diligently prosecute and complete such abatement within the time frames specified on **Attachment A**.  If corrective action is not undertaken and diligently pursued within the time allotted, then the responsible County department may (1) impose an administrative penalty (§ 2.92.060); (2) initiate abatement proceedings pursuant to Government Code sections 25845 or 25528 (§ 2.92.060); (3) commence criminal prosecution (§ 2.92.080); (4) file a civil lawsuit for injunctive relief (§ 2.92.090); and/or (5) initiate any other remedy available under the law (§ 2.92.060).

In the event that abatement proceedings are initiated, all costs incurred by the County to abate the nuisance will be charged to the owner of the property and shall become a lien against the property under Government Code 25845.

In the event that an administrative citation is issued, the fine or penalty imposed, as confirmed by the Board of Supervisors, shall become a lien against the property under Stanislaus County Code § 2.92.060.

For further information concerning this Notice, please contact the Department of Environmental Resources, 3800 Cornucopia Way, Suite C, Modesto, California 95358-9492 or call (209) 525-6700.

Doc. # 1-3 at 22.

This court agrees with the Fourth Circuit Court of Appeals' opinion in Lane Hollow Coal Co. v. DOWCP, 137 F.3d 799 (4th Cir. 1998), which noted that "[n]o 'process,' however thorough, can provide what is 'due' without notice to those who stand to lose out thereby." Id. at 807. The notice that is required is the notice of an opportunity to challenge the agency action in a meaningful way. Even if the court were to interpret the Notice as an "opportunity [for Plaintiffs] to familiarize themselves with the requirement of the County Code, [and] also as an opportunity for discourse between staff and the property owner regarding the proper application of the ordinance code" as Defendants contend, such "opportunity for discourse" would be insufficient for due process purposes. Pursuant to Laudermill, "[a]n essential principle of due process is that a deprivation of live, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case." Laudermill, 470 U.S. at 542. Where, as here, the property interest at stake is substantial, the principle requires at minimum "'some kind of hearing'" prior to the deprivation. Id. The court interprets the term "hearing" in this context to mean an adversarial or quasi-adversarial proceeding wherein the aggrieved party has an opportunity to substantively challenge the proposed agency action. Even if the Notice did transmit a invitation to become familiar with the county code or an opportunity for discourse – a contention that the court does not concede at this point – such an "invitation" is insufficient to communicate the availability of the hearing process that County allegedly provides.

To prevail on their motion to dismiss on the ground there was no Fourteenth Amendment violation because of the existence of a robust review process, Defendants must show that Plaintiffs received adequate opportunity to engage such process; that is, that Plaintiffs received adequate notice of an opportunity for a hearing to substantively challenge the County's determination.  The court finds that on the basis of documents now before the court and subject to judicial notice, Defendants have failed to make that showing.

### D.  Defendant McClendon not Entitled to Qualified Immunity

Defendants contend that individual Defendant McClendon is entitled to qualified immunity.  To determine whether qualified immunity applies, the threshold question is whether , in the light most favorable to the party asserting injury, the facts show an officer's conduct violated a constitutional right.  Saucier v. Katz, 533 U.S. 194, 201 (2001)]; Robinson v. Solano County, 278 F.3d 1007, 1012 (9th Cir. 2002) (en banc).  If no constitutional right was violated, immunity attaches and the inquiry ends.  Saucier, 533 U.S. at 201.  If a constitutional right  would have been violated were a plaintiff's allegations established, the next step is to ask whether the right was clearly established in light of the context of the case.  Id.  Finally, the contours of the right must be clear enough that a reasonable officer would understand whether this or her acts violate that right.  Id. at 202.

Although Defendants correctly set forth the legal basis for qualified immunity, they completely mischaracterize the basis for Plaintiffs' claim of due process violation.  The entirety of Defendants' argument centers around Defendants' contention that McClendon did not violate Plaintiffs' due process rights by inspecting the property and issuing the Notice.  Given that the court has construed Plaintiffs' due process claim as alleging the failure to provide notice of an opportunity to be heard, Defendants' argument that McClendon violated no rights by conducting the inspection and issuing the Notice misses the point.

McClendon is alleged to have conducted the inspection, explained the nature of the infraction to Plaintiffs and to have issued the Notice.  To show that McClendon is entitled to

11

qualified immunity, Defendants must show that McClendon either reasonably believed she was providing adequate notice of an opportunity to be heard or that she reasonably believed she was not required to provide notice of an opportunity to be heard.  Given that Defendants have provided no facts or argument to support either contention, the court must deny the motion to dismiss the due process claim against McClendon on the ground of qualified immunity.

## II.  Plaintiffs' Fifth Claim for Relief – Declaratory Relief

Plaintiffs' fifth claim for declaratory relief is based on Plaintiffs' allegation of deprivation of due process rights under the Fourteenth Amendment.  In pertinent part, the complaint alleges

> Plaintiffs desire a declaration as to the validity of [D]efendants custom and actions, as described in this complaint, both on their face and as applied to [P]laintiffs' deprivation of property as described herein.  Due to the fact that [P]laintiffs have no adequate remedy at law, unless the court issues an appropriate declaration of rights, the parties will not know whether [D]efendants' policies and procedures comply with the law, and there will continue to be disputes and controversy surrounding the [D]efendants' current policies with regards to issuance of similar notices, in addition to the permitted uses of [P]laintiffs' Property.

Doc. # 1-3 at ¶ 42.

The crux of Defendants' argument is that there is no governmental action contingent on the outcome of Plaintiffs' Fourteenth Amendment claim.  That is, Defendants assert that the Notice was issued and there are no further legal rights to be declared as between the parties.  Plaintiffs oppose Plaintiffs' argument noting that, at minimum, the Order has been apparently invalidated by County's memorandum of December 31, 2008, which stated that, based on an inspection in *September* – that is, prior to any corrective action by Plaintiffs – it had been determined that there was no zoning code violation.  Plaintiffs contend that, at minimum, Defendants' correspondence of December 31, 2008, coupled with their assertions in their motion for dismissal that the Notice was properly issued, creates an ongoing question of whether Plaintiffs would be subject to the same treatment they now complain of if they

12

were to resume their iris farming enterprise.

The court recognizes that Plaintiffs' fifth claim for relief is a case study in ambiguity. Based on Plaintiffs' arguments against Defendants' motion, the court interprets Plaintiffs' fifth claim for relief as requesting declaratory judgment as to both the issue of whether Plaintiffs' iris farming enterprise violated any zoning ordinance and whether County's process for issuance of Notices violates procedural process both as applied and on its face. Based on Defendants' assertions that the Notice was correctly issued and based on Plaintffs' representation that they view the December 31 correspondence as permission to resume their iris farming activities, the court finds there remains the possibility of future governmental action that may impinge again on Plaintiffs' interests. The court therefore declines to dismiss Plaintiffs' claim for relief for declaratory judgment at this point in the proceedings.

**III. Plaintiffs' First Claim for Relief – Inverse Condemnation**

Defendants assert a total of five grounds for dismissal of Plaintiffs' inverse condemnation claim. In order, Defendants contend they are entitled to dismissal of Plaintiffs' inverse condemnation claim because: (1) Plaintiffs failed to exhaust administrative remedies; (2) Plaintiffs failed to exhaust judicial remedies; (3) the issuance of the Notice was lawful; (4) the issuance of the Notice was not a substantial cause of Plaintiffs' injury; and (5), County is immune from claims of inverse condemnation caused by Code enforcement activities.

Plaintiffs' claim for inverse condemnation must be dismissed as inadequately pled, but for reasons unrelated to Defendants' contentions. A claim for inverse condemnation is based upon the Takings Clause of the Fifth Amendment of the United States Constitution. "'The Fifth Amendment does not proscribe the [mere] taking of property, it proscribes taking without just compensation.' [Citation.]" Del Monte Dunes at Montery , Ltd. v. City of Montery, 920 F.2d 1496, 1506 (9th Cir. 1990) ("Del Monte Dunes") (quoting Williamson County Reg'l Planning Comm'n, 473 U.S. 172, 194 (1885)) ("Williamson"). Where, as here, there is an as applied challenge under the takings clause, the landowner must establish "that

the government has (1) taken the landowner's property by imposing regulations that go too far (2) without tendering just compensation for the taking." Del Monte Dunes, 920 F.2d at 1500. "Until a landowner has been denied just compensation by the state, no constitutional violation occurs. [. . . .] Consequently, the compensation component of a taking claim is not ripe until the local government refuses to compensate the landowner for the taking." Id. at 1506.

The Ripeness requirement imposed here is distinct both from any exhaustion requirement and from the ripeness issue raised by Defendants with regard to Plaintiffs' Fourteenth Amendment Due Process claim.  A claim for inverse condemnation seeks to vindicate a right granted under the United States Constitution and so may be asserted pursuant to 42 U.S.C. § 1983.  As such, exhaustion of administrative remedies is not required.  See Williamson, 473 U.S. at 192.  "The question whether administrative remedies must be exhausted is conceptually distinct, however, from the question whether an administrative action must be final before it is judicially reviewable.  [. . . .] While the policies underlying the two concepts often overlap, the finality requirement is concerned with whether the initial decision maker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." Id. at 193 (internal citation omitted).

In a similar vein, the requirement for refusal of just compensation is distinct from the pre-deprivation hearing process Plaintiffs allege was not made available to them.  While the court may, on the basis of information provided in the complaint, presume the validity of Plaintiffs' allegation that no opportunity for pre-deprivation hearing was afforded, there is no basis for any such presumption with regard to the separate issue of whether state remedies for a constitutional taking are inadequate.  See Del Monte Dunes, 920 F.2d at 1506 - 1507 ("A

14

landowner who seeks to sue in federal court before seeking compensation from the state

bears the burden of establishing that state remedies are inadequate." (internal quotation

marks and citation omitted)). Plaintiffs have failed to carry their burden in this regard.

The court lacks information from which it could conclude that Plaintiffs' insufficient

claim for inverse condemnation could or could not be cured by amendment of the pleading.

Amendment will therefore be allowed.

**IV. Plaintiffs' Claim for Conversion**

Plaintiffs' complaint alleges, in pertinent part:

> At all times herein mentioned, and in particular on or about September 12,
> 2008, [P]laintiffs were, and still are, the owners and were, and still are,
> entitled to the possession, use and disposition of the iris stock harvested from
> their Property described herein.
> [. . . .]
> In or around September 2008, [D]efendants, by virtue of the issuance of the
> Notice and the threat of civil and criminal penalties contained therein,
> intentionally exercised dominion and control, and ultimately converted the
> property described herein, to the exclusion and detriment of [P]laintiffs.

Doc. # 1-3 at ¶¶ 27, 29.

"Conversion is the wrongful exercise of dominion over the property of another. The

elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the

property; (2) the defendant's conversion by a wrongful act or disposition of property rights;

and (3) damages." Burlesci v. Petersen, 68 Cal.App.4th 1062, 1066 (1998). "It is not

necessary that there be a manual taking of the property; it is only necessary to show an

assumption of control or ownership over the property, or that the alleged converter has

applied the property to his own use." Oakdale Village Group v. Fong, 43 Cal.App.4th 539,

543-544 (2nd Dist. 1996).

Defendants move for dismissal of Plaintiffs' conversion claim on the ground there

was "no 'wrongful' exercise of dominion." Doc. 3 6 at 20:6. To the extent Defendants'

emphasis is on the word "wrongful," their argument is flawed. Defendants maintain

throughout their motion to dismiss that the issuance of the Notice was proper because

15

Plaintiffs were involved in the production of irises for their retail nursery business that was not in conformance with applicable zoning regulations.  At this stage in the proceedings, there are no facts or allegations upon which the court could conclude that Plaintiffs' operation was not in conformity with zoning regulations; a proposition that Plaintiffs vigorously dispute.  Thus, those of Defendants' arguments that are based on the premise that the Notice was properly issued because Plaintiffs' activities were not in conformity with applicable regulations must necessarily fail.

However, this does not answer the question of whether Plaintiffs' have alleged facts sufficient to state a claim for conversion.  If the emphasis in Defendants' ground for dismissal is on the word "dominion," it becomes clear that Plaintiffs have failed to adequately state a claim for conversion.

The gravamen of the tort of conversion the wrongful exercise of possessory rights over the goods converted by the defendant.  See Spates v. Dameron Hospital Ass'n, 114 Cal.App.4th 208, 222 (3rd Dist. 2003) (noting the plaintiff's burden to show "an intention or purpose to convert the goods and to exercise ownership over them . . . ." in order to state a claim for conversion).  The "goods" in question here is the iris crop Plaintiffs destroyed upon Notice of the alleged "violation."  While Plaintiffs may have subjectively felt that their only option in light of the Notice was to destroy their crop, the fact remains that there is no allegation that Defendants ever asserted "possession" of the crop in the sense conveyed by any of the case authority cited by the parties or that the court can find.  The court can find no authority for the proposition that prohibition of a particular disposition of goods by a regulating agency can amount to possession within the meaning of courts' application of that term to the tort of conversion.  Plaintiffs' claim for conversion will therefore be dismissed.

**V.  Plaintiffs' Claim for Negligence**

Plaintiffs' second claim for relief alleges negligence against all Defendants.  Defendants contend they are immune from suit under California Government Code §§ 810, et

16

seq. Plaintiffs appear to concede that the entity Defendant, County, is immune from liability, but Plaintiffs allege that, to the extent a negligence action can be maintained against McClendon, Plaintiffs can sue County under a theory of *respondeat superior*. The court also notes that Defendants move to dismiss on substantive grounds alleging that the Notice was properly made, and that Defendants' actions were not the cause of Plaintiffs' harm. As previously noted, Defendants are not entitled to dismissal of claims on the theory that the Notice was properly administered because there are no facts evident on the face of the complaint or available to the court through judicial notice to support the allegation that Plaintiffs' enterprise did, in fact, constitute a violation of applicable zoning codes. The court's attention is therefore focused on Defendants' contention that they are entitled to immunity from Plaintiffs' claim for negligence. The court will address the immunity claims of both the County and McClendon.

California's Tort Claims Act ("CTA")was enacted in 1963 in response to judicial decisions that increasingly restricted the applicability of sovereign immunity to the subdivisions of states, including counties and municipalities. Elson v. Public Utilities Comm'n, 51 Cal.App.3d 577, 582 (2nd Dist. 1975); see also Beentjes v. Placer County Air Pollution Control Dist, 397 F.3d 775, 777 (9th Cir. 2005) (noting that the Supreme Court has consistently refused to apply Eleventh Amendment immunity to state political subdivisions). The CTA establishes conditions for liability of both counties and employees of counties for money damages arising from tort claims. The court will discuss each in turn.

### A. Entity Immunity

Section 815 of the California Government Code[1] provides that a public entity[2] "is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a

[1] All references to code sections hereinafter refer to sections of the California Government Code unless otherwise specified.

[2] Section 811.2 defines "public entity" to include counties and their political subdivisions for purposes of the TCA.

public employee or any other person" "except as otherwise provided by statute."  Plaintiffs'

second claim for relief does not specify a statutory basis for imposing liability against

County.  For purposes of this discussion, the court will presume that Plaintiffs' negligence

claim, to the extent it is asserted against County, is pursuant to California Civil Code § 1714.

With respect to decisions made by government entities with regard to zoning or

permitting, section 818.4 provides immunity broadly for entity liability for "injury caused by

the issuance, denial, suspension or revocation of, or by the failure or refusal to issue, deny,

suspend or revoke, any permit, license, certificate, approval, order, or similar authorization . .

. ." Id.  Section 815.6 on the other hand provides that:

> Where a public entity is under a mandatory duty imposed by an enactment that
> is designed to protect against the risk of a particular kind of injury, the public
> entity is liable for an injury of that kind proximately caused by its failure to
> discharge the duty unless the public entity established that it exercised
> reasonable diligence to discharge the duty.

California courts addressing the interplay between section 818.4 and section 815.6

have determined that the immunity conferred by section 818.4 does not attach where the

harm complained of is caused by the failure of an entity to discharge a duty that the entity

was required by statute to discharge; that is, where the duty imposed on the public entity was

mandatory.  Elson, 51 Cal.App.3d at 588 - 589; see also Richards v. Dep't of Alcoholic

Beverages Control, 139 Cal.App.4th 304, 318 (2006) (immunity under section 818.4 applies

only to discretionary activities).  In the context of zoning and enforcement of zoning codes

courts have generally held that pursuant to the CTCA, "immunity is the rule; liability is

imposed only if provided by statute."  Thompson v. City of Lake Elsinore, 18 Cal.App.4th

49, 62 (4th Dist. 1993).  To invoke liability under section 815.6, a plaintiff must show that

"(1) an enactment [. . .] impose[s] a mandatory, not discretionary, duty [citations ]; (2) the

enactment must intend to protect against the kind of risk of injury suffered by the party

asserting section 815.6 as a basis for liability [citations]; and (3) the breach of the mandatory

duty must be a proximate cause of the injury suffered. [Citations.]" Id. at 54 (internal

1  citations omitted).

2          In Thompson, the court held that the issuance of a building permit was a discretionary

3  act, id. at 57, but that the issuance of an occupancy permit was ministerial where a final

4  inspection had found the residence in compliance with all applicable codes.  Id. at 58.  Of

5  particular interest in this case, the court in Thompson considered and rejected an argument by

6  the plaintiff in that case that liability under section 815.6 extended to the issuance of building

7  permits because the issuance of such permits "did not rise to the level of basic policy making

8  decision."  Id.  The Thompson court held that regardless of the level of discretion exercised

9  by the agency or its employees, liability under section 815.6 does not attach unless there is an

10  affirmative showing by the Plaintiff of the three factors noted above.  Id. at 61 - 62.  The

11  Ninth Circuit reached a similar conclusion in Kay v. City of Rancho Palos Verdes, 504 F.3d

12  803 (9 Cir. 2007), in the context of a suit for money damages for refusal to issue a

13  conditional use permit.  In Kay, the Ninth Circuit held that, so long as the defendant's

14  decision to deny the conditional use permit could be based on any discretionary

15  consideration, the entity denying the permit is immune under section 818.4.  Id. at 809 - 810.

16          Two consideration lead this court to the conclusion that County's decision to issue the

17  Notice was an act of discretion within the meaning of section 818.4.  First, the decision to

18  issue the Notice is analogous to zoning decisions or decisions to issue conditional use

19  permits.  Such decisions are, in essence, applications of observed facts to zoning or

20  applicable land use codes.  The level of discretion is the same in all such cases and court have

21  uniformly held that, where a particular result is not compelled by law, immunity attaches.

22  The second consideration has to do with the process that attaches to the decision to issue a

23  Notice.  The court takes judicial notice of the review procedures established by County

24  ordinances that provide for hearing and review of zoning decisions.  Whether or not such

25  procedures were effectively *offered* to Plaintiffs, the fact remains that County would have no

26  reason to offer such procedures if its zoning decisions were purely ministerial in nature.

27

28                                              19

Plaintiffs do not appear to object to Defendants assertion of immunity with regard to County's role in the issuance of the Notice.  The court will discuss Plaintiffs' grounds for objection when it discusses McClendon's individual liability.  With regard to County, the entity Defendant, the court finds County is immune from Plaintiffs' claim for money damages on a theory of negligence pursuant to section 818.4.

### B.  Individual Employee Liability for Negligence

The immunity provided to public entities by section 818.4 is mirrored with respect to public employees by sections 820.2 and 821.2.  Section 820.2 provides that a public employee is not liable for "an injury resulting from his act or omission where the act or omission was the result of the exercise of discretion vested in him, whether or not such discretion was abused."  Section 821.1 is the counterpart of section 818.4 that immunizes public employees from liability for damages arising from "their roles in the discretionary permit decisions governed by section 818.4"; that is, immunizes public employees from liability arising from liability arising from the issuance or denial permits, licenses and the like.  Kay, 504 F.3d at 809.  Thus, Defendants' liability for Plaintiffs' claim for money damages for negligence against McClendon turns on the issue of whether McClendon's acts with regard to the Notice were discretionary or ministerial.

Plaintiffs argument that McClendon's acts were ministerial rather than discretionary is set forth in Section H. 2. of Plaintiffs' opposition brief; the section that sets forth Plaintiffs' opposition to Defendants' motion to dismiss the conversion claim.  In their argument, Plaintiffs fairly represent both the definition of discretion and the ambiguities inherent in determining what is and is not discretionary.  However, Plaintiffs fail to take into account either the immunizing function of section 821.2 or the showing required under Thompson.  Rather, Plaintiffs' argument focuses on issues that go to the question of whether cause existed for the issuance of the Notice under information available at the time of the inspection and whether the 4-month delay in the issuance of the December 31 Memorandum

was reasonable.  Plaintiffs also speculate on the possibility that someone else made the actual discretionary determinations regarding the issuance of the Notice and that McClendon actually exercised no discretion.

Plaintiffs arguments mischaracterize the required showing.  Pursuant to <u>Thompson</u>, immunity is presumed and Plaintiffs must show that McClendon had a mandatory duty under some statute to *not* issue the Notice or to have issued the memorandum that was issued on December 31 sooner.  Plaintiffs fail to make either showing.  The facts Plaintiffs highlight to support the proposition that McClendon's issuance of the Notice was a ministerial act support the proposition that the Notice was wrongly issued, but not that McClendon was under a statutory obligation not to issue the Notice.  As provided by section 820.2, the employee exercising discretion is immunized from suit whether or not the decision itself is made in abuse of that discretion.  What Plaintiffs contend is that they were entitled by the facts discovered at the time of the inspection to a finding of no infraction of zoning laws; what they do not allege is the existence of any statute that created a mandatory duty on McClendon's part to issue a finding of no infraction.

In a similar vein, the court finds that Plaintiffs' averments that discretion might have been vested in someone other than McClendon are both sheer speculation and beside the point.  McClendon's signature on both the Notice and the December 31 Memorandum indicate that, at minimum, she was an integral part of the decision making process with regard to the issuance of the Notice.  Further, the fact remains that there is no showing that McClendon was mandated by the force of some enactment to not issue the Notice.

The court concludes that the acts alleged in the complaint against both County and McClendon were discretionary in nature and that both County and McClendon are immune from Plaintiffs' suit for money damages under a theory of negligence.  Plaintiffs' second claim for relief will therefore be dismissed with prejudice.

**VI. Slander of Title**

Defendants seek to dismiss Plaintiffs eighth claim for relief for slander of title on the ground the County's filing of the Notice was entirely privileged pursuant to California Civil Code § 47.  Pursuant to Civil Code section 47, a publication – in this case a recordation – is privileged if it is made "in the proper discharge of an official duty," § 47(A)(a), or as a part of "any other official proceeding authorized by law." § 47(A)(b)(3).  Defendants point out that, pursuant to County Ordinance Code § 2.92.050, the county may "cause to be recorded a notice of noncompliance" if "the owner, or person responsible for committing the act that constitutes a nuisance, *fails to correct the violation*(s) within the time specified in the [Notice]."  Doc. # 6 at 31: 23 - 25 (italics added).

Defendants motion to dismiss fails because there is no basis upon which the court could conclude that the Notice was filed "in the proper discharge of an official duty."  The Notice provides 30 days for Plaintiffs to come into compliance with the order to cease and desist certain activities.  The complaint alleges that Plaintiffs did in fact cease all operations pertaining to their iris business and destroyed their inventory.  While there is no allegation that this was accomplished within the 30-day period allowed, there is no indication that it was not.  Under County's ordinance, the filing of a Notice is only proper when there is a failure to correct.  Given the court's duty to construe the pleadings liberally and resolve factual conflicts and ambiguities in Plaintiffs' favor, the court must conclude that Defendants have failed to show the filing of the Notice was entitled to privilege because there is nothing to indicate that there was a failure to correct.

Plaintiffs also oppose Defendants' motion to dismiss on the ground it remains contested whether the Notice was properly issued in the first instance.  While the court need not pass on that issue to resolve Defendants' motion, the court notes that to invoke privilege, Defendants will be burdened to show that the issuance of the Notice constituted a "proper discharge of an official duty" within the meaning of the statute.  Currently there is no

authority before the court to indicate that the filing of a Notice of non-compliance would be privileged where there was, in fact, no non-compliance.  Again, this order holds only that Defendants have failed to show the filing of the Notice was privileged based on grounds Defendants allege.  The court also notes that while Defendants' ability to invoke privilege with respect to their filing of the Notice would necessarily defeat Plaintiffs' claim for slander of title, the unavailability of the defense of privilege does not necessarily mean that Plaintiffs can recover damages.  The court makes no determination as to any other grounds for defense as to Plaintiffs' eighth claim for relief.

**VII.  Defendants' Immunities Regarding State Claims**

Defendants contend they are immune from liability for damages pursuant to a lengthy list of Sections of the California Government Code.  Blanket assertions of this sort are not particularly helpful to the court.  With the exception of Plaintiffs' claim for slander of title, the court is without need to further discuss immunities because Plaintiffs' state law claims for damages will be dismissed.  Beyond that, however, the court makes two observations with regard to Defendants' claim of blanket immunity with regard to Plaintiffs' damage claims under state law.  First, the court has found that the acts alleged against both County and McClendon that gave rise to this action involve the exercise of discretion vested in both Defendants.  Thus, to the extent immunity may apply with regard to Defendants' discretionary acts, the court has and will find in specific instances that immunity attaches as to both Defendants.  Second, the court is not inclined to address Defendants contentions with regard to immunity as to Plaintiffs' eighth claim for relief for slander of title without further pleading to address the issue of immunity as it may apply specifically to that claim.  If Defendants wish to further brief the issue of statutory immunity with regard to Plaintiffs' slander of title claim, they may do so not later than two (2) weeks from the date of issuance of this order.  Plaintiffs may reply not later than two (2) weeks from the date of filing of Defendants' additional brief.

THEREFORE, in consideration of the foregoing, it is hereby ORDERED that:

1. Defendants' motion to dismiss Plaintiffs' fourth claim for relief for violation of due process rights in violation of 42 U.S.C. § 1983 is DENIED.

2. Defendants' motion to dismiss Plaintiffs' fifth claim for declaratory relief is DENIED.

3. Defendants' motion to dismiss Plaintiffs' first claim for relief for inverse condemnation is GRANTED.  Plaintiffs' first claim for relief is DISMISSED.  Leave to amend is granted.  Any amendment shall be filed and served not later that two weeks from the date of service of this order.

4. Defendants' motion to dismiss Plaintiffs' third claim for relief for conversion is GRANTED.  Plaintiffs' third claim for relief is DISMISSED with prejudice.

5. Defendants' motion to dismiss Plaintiffs' second claim for relief for negligence is GRANTED.  Plaintiffs' second claim for relief is DISMISSED with prejudice.

6. Defendants motion to dismiss Plaintiffs' sixth claim for relief for slander of title is DENIED.

IT IS SO ORDERED.

Dated:   __March 11, 2010__              _____/s/ Anthony W. Ishii_____
                                          CHIEF UNITED STATES DISTRICT JUDGE

24